IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION                    SEP 7 2005

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

PEGGY BANKHEAD,

                    Plaintiff,              Case No. 03 C 6387

          v.

                                           Hon. Harry D. Leinenweber
WAUKEGAN SCHOOL DISTRICT, et
al.,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Peggy Bankhead (hereinafter, "Plaintiff") filed a complaint against Defendant Waukegan School District (hereinafter, the "District") alleging employment discrimination based on race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Before the Court is the Defendant's Motion for Summary Judgment. For the following reasons, the motion is **granted**.

### I.   BACKGROUND

Plaintiff, an African American, was a Paraprofessional/Special Education Assistant in the District's Alternative Behavior Disorder Student Support/Hearing Impaired Center (the "ABDSSC"). Her employment with the District was brief. She was hired in February 2001 and terminated on May 31, 2001. Throughout the duration of Plaintiff's employment, Frederick Howard (an African American) was the Associate Superintendent of Human Resources and ultimately responsible for hiring and firing Plaintiff. Plaintiff's

supervisor, Charlene Johnson (Caucasian), and former Deputy Superintendent, Myron Dagley (Caucasian), interviewed Plaintiff and recommended her hiring. Both also eventually recommended Plaintiff's termination. A Paraprofessional's principal job duties include assisting certified classroom teachers, while attending to the special needs of students at the ABDSSC.

Plaintiff's short tenure with the District was tumultuous. In March, after Plaintiff began work in the ABDSSC, Johnson received several complaints concerning Plaintiff's interaction with students. Johnson's affidavit indicates two specific instances, although no other documentation reflects these complaints. (Johnson Aff. ¶¶ 8, 9). Johnson communicated these complaints to Plaintiff, who denied any wrongdoing on her part. On April 8, 2001, however, teacher and coworker Kenneth Roznowski submitted his required paraprofessional evaluation of Plaintiff, giving her an excellent rating in all categories.

On April 25, 2001, Johnson wrote a supervision note (or, write-up) concerning a specific incident involving Plaintiff and several students, and shared the note in a meeting with Plaintiff. Johnson did not witness the incident, but received complaints from the students involved in the incident. The note stated that an unnamed staff member overheard and confirmed Plaintiff's derogatory comments -- specifically, "[y]our mama's a bitch" and "[y]ou are just a sent off" -- aimed at the students. In the note, Johnson

stated that appropriate professional behavior "includes not arguing with students or using inappropriate language." (Def. 56.1, Exh. G). After meeting with Johnson, Plaintiff handwrote over the note, "Never will I sign this. This is a lie." Her position is that she admits that an incident with the complaining students occurred, but denies making the comments and that the characterization of events was fabricated.

Johnson's second supervision note reprimanding Plaintiff occurred on May 16, 2001. On that day, Plaintiff was in a classroom with an ABDSSC student who was acting in a negative fashion. Plaintiff and the student exchanged words and eventually, a security guard and Johnson directed Plaintiff to leave the classroom. Plaintiff did not leave and the security guard carried her out of the room. (Davis Aff. ¶¶ 4-8; Pl. Dep. at 51). Johnson's note and other testimony differ from Plaintiff's account of the incident. In Johnson's version of the incident, Plaintiff was observed yelling at the student. On the other hand, Plaintiff testified that the student's behavior was threatening, that she did not raise her voice, but instead was terrified of the student and asked a security guard for assistance. Johnson was in the classroom near the end of the altercation and told Plaintiff that she had escalated the situation between her and the student, although Plaintiff disagreed. The note that Plaintiff received, but again refused to sign, stated: "Your behavior today was

unprofessional and unacceptable at ABDSSC. Again, I remind you that it is my expectation that staff always maintain their composure and be an appropriate role model for students. Another incident of this nature could result in your termination." (Def. 56.1, Exh. H).

Following the May 16th incident, Plaintiff expressed concerns to Dagley over several of the past incidents and alleged mistreatment by supervisor Johnson. On May 23, 2001, Plaintiff and her union representative met with Johnson and Dagley. Co-workers Pipes and Roznowski also were asked to attend parts of the meeting. The meeting did not go well. Plaintiff felt as though her supervisors attacked her professionally and personally by compiling evidence against her, instead of listening to her side of the story. (Pl. Dep. at 69-76). At one point, Plaintiff became upset and attempted to leave, but chose to stay after some persuasion by her union representative. (*Id.* at 77-78).

Shortly after the meeting, Johnson and Dagley recommended in memoranda to Howard that he terminate Plaintiff's employment. (Def. 56.1, Exhs. K & L). Dagley's memorandum details his version of the meeting, claiming Plaintiff "was very antagonistic in her reaction," "hostile," "rude, and unprofessional." (*Id.*, Exh. L). He also stated that Plaintiff's co-workers who spoke at the meeting "failed to substantiate any pattern of behavior by Ms. Johnson

which would resemble the allegations [of preferential treatment or prejudice]."

Plaintiff received a standard contract renewal form sometime in early May 2001. She signed the form on May 21, 2001 and sent it back to the District. (Pl. Exh. B). However, on May 31, 2001, Howard terminated Plaintiff's employment by letter. (Def. 56.1, Exh. M). Thereafter, Plaintiff filed a grievance with her union, whose representative sent a letter to Howard, but did not pursue the complaint any further because Plaintiff was a probationary employee. (Pl. Exh. D). She also filed a discrimination charge with the Equal Employment Opportunity Commission (the "EEOC") on September 18, 2001 alleging that she was terminated because of her race.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 624 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.  DISCUSSION

Plaintiff's complaint alleges that Defendant discriminated against her based on race in violation of Title VII.  The District moves for summary judgment on the ground that Plaintiff has failed to produce facts sufficient to establish a prima facie case of race discrimination.

### A.  Racial Discrimination

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ."  § 2000e-2(a)(1).  Plaintiff points to no direct evidence that Defendant discriminated against her because of her race, so she must proceed under the circumstantial evidence test. To survive summary judgment under the circumstantial evidence test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), Plaintiff must establish that:  "(1) she [is] a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was meeting [the District's] legitimate expectations; and (4) other similarly-situated employees who were not members of [her] protected class were treated more favorably." *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002)(citing *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000)).

As an African-American, Plaintiff is a member of a protected class, and her termination constitutes an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (defining an adverse employment action). Nonetheless, Plaintiff is unable to establish the final two elements of the prima facie case: that she was meeting the District's legitimate expectations and that other similarly-situated white employees were treated more favorably.

## 1. Meeting the District's Legitimate Expectations

Plaintiff has failed to produce evidence sufficient to carry her burden on this element of the prima facie case. The record establishes that the District began to view Plaintiff's job performance as unsatisfactory shortly after she started. Plaintiff had two specific write-ups of incidents where she allegedly was acting inappropriately. However, both Plaintiff's deposition and Defendant's submissions indicate several other occasions where Johnson admonished Plaintiff for her behavior. Even though Plaintiff refutes the truth of the underlying allegations, she does admit to the occurrence of these admonishments between herself and her supervisor. Further, a May meeting between Plaintiff and her supervisors and follow-up memoranda reflect that she was not meeting their professional expectations. Specifically, both supervisors were upset with her behavior during their May meeting.

In the face of this substantial evidence that she was not meeting the District's legitimate expectations, Plaintiff must specifically refute her supervisors' explanation of her deficient job performance. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994)(stating that "a plaintiff may create an issue of fact by specifically refuting facts that allegedly support the employer's claim of performance deficiencies"). Plaintiff's own deposition testimony constitutes her most detailed refutation of the District's appraisal of her job performance. However, her deposition and arguments are inadequate to avoid summary judgment because a Title VII plaintiff may not rely on general averments of adequate performance to survive summary judgment. *See Dale v. Chi. Trib. Co.*, 797 F.2d 458, 464 (7th Cir. 1986)(affirming summary judgment for defendant employer because plaintiff's only evidence that he had met his employer's legitimate expectations was his own deposition). "'An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability.'" *Williams v. Seniff*, 342 F.3d 774, 789 (7th Cir. 2003)(quoting *Gustovich v. AT&T Communications*, Inc., 972 F.2d 845, 848 (7th Cir. 1992)).

Plaintiff's assertions that she was performing satisfactorily and that all incidents involving students where her behavior allegedly was inappropriate were fabricated, do not alone substantiate evidence of meeting the District's legitimate

expectations. Plaintiff asserts that her supervisors attacked her personally and did not like her personality. She does not deny the events of the May 2001 meeting, where her supervisors characterized her behavior as "rude" and "unprofessional." By itself, Plaintiff's negative behavior at the meeting may be enough to terminate her employment for failure to meet the District's legitimate expectations.

Notably, the record contains only one statement from a third party (such as a supervisor or coworker) to substantiate Plaintiff's assertion that she was performing her job satisfactorily. To support her contention, Plaintiff points to teacher Roznowski's highly favorable evaluation from April 2001. Roznowski submitted this evaluation on April 8, 2001 -- several weeks before Plaintiff's two supervision notes and the May 2001 meeting. Although the evaluation may be some evidence of Plaintiff's positive performance, it does not create a genuine issue of material fact because of the substantial documented evidence of Plaintiff's negative performance that occurred after this evaluation. Moreover, Plaintiff admits that prior to Roznowski's evaluation, she "never met him in [her] life. . . ." (Pl. Dep. at 84). Accordingly, Plaintiff has not established the third element of her prima facie racial discrimination case.

The Court notes that Plaintiff's fabrication arguments relate to the pretext analysis. In a Title VII summary judgment motion,

the Court first decides if Plaintiff can establish a prima facie race discrimination case. If a plaintiff can successfully build a prima facie case, then the Court addresses the issue of pretext. To survive summary judgment, a plaintiff must present evidence that the defendant's proffered reasons for firing her were pretextual, and that she was really fired because of her race. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 652 (7th Cir. 2001). The Court does not weigh the prudence of an employer's decisions, but only whether the employer's proffered reason for its actions were honest. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001). A plaintiff's evidence must show that the defendant's reasons had no basis in fact, were not the real reasons, or were insufficient to motivate the action. *Hoffman-Dombrowski*, 254 F.3d at 652.

Here, Plaintiff fails to establish a prima facie case on both the third and fourth elements of race discrimination. Therefore, the Court need not proceed to the pretext analysis. However, even in considering Plaintiff's allegations that Johnson's write-ups and other statements were fabricated, she has not provided any evidence to undermine Johnson's version of the incidents. She states that several students, coworkers, and other District employees witnessed each incident, but does not present any affidavits or other documentation to substantiate her factual version. The Court recognizes that working at the ABDSSC is a difficult task because

of the highly-charged and sometimes dangerous environment. Even so, the Court cannot review the prudence of the District's decision to terminate Plaintiff.

### 2. Similarly-Situated Employees Treated More Favorably

Plaintiff also has not established the fourth element of the *McDonnell Douglas* test. "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects. . . ." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). In the instant case, Plaintiff testified that she was treated differently from her fellow paraprofessionals. The Court addresses Plaintiff's general allegations, concluding that she failed to satisfy her burden.

Plaintiff's response brief states that "I was treated differently than any of my white co-workers: Ms. Gerger, Ms. Rose Bankhead (My sister-in-law) who referred me to the position and Ms. Johnson for employment, because of my experience and educational background with dealing with students with behaviors." (Pl. Res. Br. ¶ 4). Although Plaintiff's argument is not entirely clear, it appears that she asserts that Ms. Gerger and Ms. Rose Bankhead, both allegedly white paraprofessionals, were similarly situated and treated more favorably. Plaintiff contends that she "was not supported" by supervisor Johnson, "or given any clear direct instruction on how [to] deal with anything pertaining to the

students until after a false complaint was made by a student." The Court construes this argument as Plaintiff's statement about her treatment versus coworkers Gerger and Bankhead, who may have been given instruction that Plaintiff allegedly did not receive.

Plaintiff elaborates on these statements in her response to Defendant's Local Rule 56.1 statement of facts. She states that "I know black[] aides had a rough time under the supervision of Ms. Charlene Johnson. I was the only black female paraprofessional working at ABDSSC. There was another black female employee working when I started who also had problems with Ms. Johnson. (Vanessa Crawford). I [am] not sure what happened to her[.] I just know she wasn't there anymore." (Pl. 56.1 Res. ¶ 17). She also generally states that she "told Mr. Dagley that Ms. Johnson treats me differently then she treats her white para[professionals]. As far as write-ups and behaviors of students." (*Id.* ¶ 18). And that she "definitely was treated differently than *[sic]* [her] white co-workers." (*Id.* ¶ 21).

The Court recognizes that Plaintiff proceeds *pro se*. However, Plaintiff still must produce at least *some* evidence to support her allegations of discrimination on summary judgment. Plaintiff makes several vague and unsupported statements. She alleges that several white paraprofessional employees were treated more favorably under supervisor Johnson, but she does not detail her allegations, have actual personal knowledge of the situations, or provide evidence

beyond her own statements to support such contentions (such as depositions, affidavits, or other documentation). *See Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 614 (7th Cir. 2001) (stating that "occurrence[s] not within [Plaintiff's] personal knowledge . . . cannot satisfy her evidentiary burden" without other evidence). Plaintiff also makes a general allegation that "only black students would have the police called on them when they threatened white staff. . . ." (Pl. Resp. 56.1 ¶ 17). However, this allegation is unsupported and is not relevant to Plaintiff's Title VII race discrimination claim. Without more, the Court concludes that Plaintiff's uncorroborated statements are insufficient to meet her burden on this element. *See Oest*, 240 F.3d at 615. Accordingly, Plaintiff fails to establish a prima facie case of race discrimination.

### III. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: September 7, 2005

- 13 -